IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| DONNA WESLEY,<br>　　　*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>　　　*Defendant*. | §<br>§<br>§<br>§   Civil Action No. 4:23-CV-296-BJ<br>§<br>§<br>§<br>§<br>§<br>§ |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Donna Wesley ("Wesley") seeks judicial review of a final adverse decision of the Commissioner of Social Security pursuant to 42 U.S.C. § 405(g).  Because the parties have consented to proceed before a magistrate judge, the undersigned has full authority under 28 U.S.C. § 636(c) to consider this appeal, including issuing a final judgment.  For reasons stated herein, the decision of the Administrative Law Judge ("ALJ") is **AFFIRMED.**

**I.      STATEMENT OF THE CASE**

Wesley filed this action pursuant to Section 405(g) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA").  On November 17, 2020, Wesley applied for DIB due to mental and physical impairments.  (Transcript ("Tr.") 15, 223.)  Wesley's application was both denied initially and on reconsideration.  (Tr. 15, 111–14, 117–20.)  Wesley, along with her representative, then requested a hearing before an administrative law judge ("ALJ").  (Tr. 46–75, 123–24.)  On August 4, 2022, the ALJ held a hearing via teleconference, and on October 3, 2022, the ALJ issued a decision finding that Wesley was not disabled within the meaning of the SSA.  (Tr. 46–75, 33.)  Wesley then filed a request for

review of the ALJ's decision to the Appeals Council. (Tr. 179–81.) On February 9, 2023, the Appeals Council denied Wesley's request for review of the ALJ's decision, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1–7.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404. The SSA defines "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), (b). "Substantial gainful activity" is defined as work activity involving the use of significant physical or mental abilities for pay or profit. *See id.* § 404.1510. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(a)(4)(ii), (c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–01 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"). 20 C.F.R. Pt. 404 Subpt. P, App. 1; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).[1] Fourth, if disability cannot be found based on the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). Fifth, the impairment must prevent

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant is able to do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), (e). The claimant's RFC is used at both the fourth and fifth steps of the five-step analysis. *Id.* § 404.1520(a)(4). At Step Four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* § 404.1520(a)(4)(iv). At Step Five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* § 404.1520(a)(4)(v).

2

the claimant from doing any work, considering the claimant's residual functional capacity ("RFC"), age, education, and past work experiences. *Id.* §§ 404.1520(a)(4)(v), (g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999) (citing *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991)). "At steps one through four, the burden of proof rests upon the claimant to show he is disabled." *Crowley*, 197 F.3d at 198. If the claimant satisfies this responsibility, "the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments." *Id.* (citing *Fraga v. Bowen*, 810 F.2d 1296 (5th Cir. 1987). If the Commissioner meets his burden, it is up to the claimant to then show that he cannot perform the alternate work. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 197–98).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards, and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (citing *Fraga*, 810 F.2d at 1302); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988) (per curiam) (first citing *Hollis v. Bowen*, 832 F.2d 865, 866 (5th Cir. 1987); and then citing *Underwood v. Bowen*, 828 F.2d 1081, 1082 (5th Cir. 1987)). Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). It is more than a mere scintilla, but less than a preponderance. *Id.* "A finding of no substantial evidence is appropriate only if *no* credible evidentiary choices or medical findings support the decision." *Id.* (emphasis added). An ALJ's decision "is not subject to reversal, even if there is substantial evidence in the record that would have supported the opposite conclusion, so long as substantial evidence also supports the conclusion that was reached by the ALJ." *Zenteno v. Comm'r of Soc. § Admin.*, No. 4:23-CV-

3

00089-BJ, 2023 WL 6300582, at *2 (N.D. Tex. Sept. 27, 2023) (citing *Dollins v. Astrue*, No. 4:08-CV-00503-A, 2009 WL 1542466, at *5 (N.D. Tex. June 2, 2009)). This Court may neither reweigh the evidence in the record, nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417 (citing *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)); *Hollis*, 837 F.2d at 1383 (citing *Neal v. Bowen*, 829 F.2d 528, 530 (5th Cir. 1987)).

### III.   ISSUES

In her brief, Wesley presents the following issues:

1. Whether the ALJ erred at Step Two in not finding that Wesley's physical impairments were severe; and

2. Whether substantial evidence supports the ALJ's RFC findings.

(Plaintiff's Brief ("Pl.'s Br.") at 1; 10–17.)

### IV.   ALJ DECISION

In a decision dated October 3, 2022, the ALJ concluded that Wesley was not disabled within the meaning of the SSA. (Tr. 12, 33.) At Step One, the ALJ found that Wesley had not engaged in substantial gainful activity during the period from her alleged onset date of September 1, 2017, through her date last insured of September 30, 2021. (Tr. 17.) At Step Two, the ALJ found that Wesley had the following severe impairments: major depressive disorder, generalized anxiety disorder, and panic disorder. (Tr. 18.) Additionally, the ALJ found that Wesley had the following non-severe impairments: cholecystitis, cholelithiasis, chronic kidney disease, hypertension, anemia, lumber facet arthropathy, diabetes, asthma, rheumatoid arthritis, obesity, and fatty liver. (Tr. 18.) Next, at Step Three, the ALJ determined that Wesley did not have an impairment or combination of impairments that met or was medically equivalent to the severity of one of the listed impairments in the Listing. (Tr. 22.) As to Wesley's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember, and carry out simple and detailed, but not complex, tasks. She can have occasional interaction with coworkers, supervisors, and the general public.

(Tr. 25.)

At Step Four, the ALJ found that Wesley was unable to perform any of her past relevant work. (Tr. 30.) Subsequently, at Step Five, the ALJ found that there were jobs (laundry worker, dishwasher, and cleaner) that existed in significant numbers in the national economy that Wesley could perform based on her age, education, work experience, and RFC. (Tr. 30–32.) Accordingly, the ALJ found that Wesley was not disabled as defined in the SSA from September 1, 2017, through September 30, 2021. (Tr. 32–33.)

## V.     DISCUSSION

### A. <u>Step Two Non-Severe Physical Impairments</u>

The first issue is whether the ALJ erred at Step Two in failing to find any single or combination of physical impairments as severe. (Pl.'s Br. at 1, 11–12.) Wesley claims that, among other physical impairments, "Plaintiff's obesity alone would require a physical finding of severity." (Plaintiff's Reply ("Pl.'s Reply") at 1.) Wesley points to several places in the record in which her obesity is diagnosed and described. (Pl.'s Br. at 11; Pl.'s Reply at 2.) Wesley further states:

> To argue classified severe obesity is somehow not "severe" and that it would be clear her obesity would not affect her ability to work does not withstand scrutiny. Indeed, this Court has clarified that an "impairment is not severe only when it is a 'slight abnormality' having 'such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work . . . .'"

(Pl.'s Reply at 2 (citing *Ducksworth v. Comm'r, Soc. Sec. Admin.*, No. 4:22-CV-14, 2023 WL 2190224, at *3 (N.D. Tex. Feb. 2, 2023)).)

5

To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA. *See Stone*, 752 F.2d at 1104–05. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id*. at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)); *see Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2001) (reaffirming *Stone*).

In this case, at Step Two the ALJ found that Wesley had non-severe impairments including "cholecystitis, cholelithiasis, chronic kidney disease, hypertension, anemia, lumbar facet arthropathy, diabetes, asthma, rheumatoid arthritis, obesity, and fatty liver." (Tr. 18.) After the ALJ reviewed the medical diagnoses and documentation of these impairments, she ultimately found:

> The medical record indicates the claimant has had no significant exacerbations, complications, or end organ damage . . . . Her reviews of systems have been negative for fatigue, chest pain, palpitations, shortness of breath, dizziness, weakness, abdominal pain, nausea, and symptoms of retinopathy, peripheral neuropathy, or nephropathy. Her physical examination findings consistently indicate her heart has had a regular rate and rhythm with no murmurs, rubs, or gallops; her lungs have been clear with normal breath sounds; she has had no genitourinary/kidney abnormality associated with diabetic nephropathy; and she has had no focal neurological deficits associated with diabetic neuropathy.

(Tr. 18–19.)

Finding no evidence of work interference, considering each impairment individually and in combination, the ALJ had substantial evidence to conclude that they were "slight abnormalities

6

that have had such a minimal effect on her that they would not be expected to interfere with her ability to work." (Tr. 22; *see Stone*, 752 F.2d at 1101.)

Even assuming without deciding that the ALJ should have found any of Wesley's physical impairments severe at Step Two, the ALJ specifically considered them individually and in combination in the RFC. (Tr. 29–30.) The ALJ, after considering Wesley's non-severe physical impairments of "cholecystitis, cholelithiasis, chronic kidney disease, hypertension, anemia, lumbar facet arthropathy, diabetes, asthma, rheumatoid arthritis, obesity, and fatty liver," concluded, "[T]he evidence indicates those impairments do not affect or limit her residual functional capacity." (Tr. 30.) Consequently, any error the ALJ committed relating to Wesley's non-severe physical impairment finding at Step Two was harmless. *See Boothe v. Colvin*, No. 3:12-CV-5127-D, 2013 WL 3809689, at *5 (N.D. Tex. July 23, 2013) ("But assuming *arguendo* that the ALJ erred by not finding based on [a doctor's] diagnoses that [the claimant's] impairments are severe, the error is harmless because the ALJ considered these conditions in his RFC analysis."); *Gibbons v. Colvin,* No. 3:12-CV-0427-BH, 2013 WL 1293902, at *16 (N.D. Tex. Mar. 30, 2013) (holding that error under *Stone v. Heckler* potentially causing ALJ not to recognize certain impairments as severe at Step Two was harmless because ALJ considered the impairments in RFC); *Reliford v. Colvin,* No. H-12-1850, 2013 WL 1787650, at *13 (S.D. Tex. Apr. 25, 2013) ("[E]ven if the ALJ's failure to make a specific severity finding with regard to foot pain was an error, it was harmless because he considered related limitations at subsequent steps of the disability analysis.").

Moreover, Wesley has not presented any non-conclusory or non-speculative evidence showing how her non-severe physical impairments impacted her ability to work in a manner not already considered in the ALJ's RFC determination.[2] *See, e.g.*, *McDaniel v. Colvin*, No. 4:13-CV-

---

[2] Wesley argues that various diagnoses and reduced range of motion require some physical limitation in the RFC. (Pl.'s Br. at 13–14; Pl.'s Reply at 1–2.) However, the ALJ did consider these diagnoses and reduced range of

989-O, 2015 WL 1169919, at *4–5 (N.D. Tex. Mar. 13, 2015) (stating that the claimant "does not point to any evidence in the record indicating that her alleged obesity or hearing loss caused any work-related limitations beyond those already found by the ALJ in his RFC determination."); *Lewis v. U.S. Comm'r Soc. Sec. Admin.*, No. 07-CV-1617, 2008 WL 5459741, at *2 (W.D. La. Dec. 1, 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-causing limitation that was not considered by the ALJ). Accordingly, even assuming without deciding that the ALJ erred in finding Wesley's impairments non-severe, such error is harmless because the ALJ considered all of Wesley's non-severe physical impairments in the RFC determination. Accordingly, remand is not required for this issue.

### B. RFC Determination

The second issue is whether substantial evidence supports the ALJ's RFC determination. In her brief, Wesley argues that the ALJ erred because her RFC determination was unsupported by any medical evidence or medical opinion. (Pl.'s Br. at 12–17.) Specifically, Wesley claims there was no basis for the ALJ's RFC determination because a State agency medical consultant ("SAMC") did not evaluate the case. (Pl.'s Br. at 11, 17.) Further, Wesley argues that the ALJ should have sought out additional information through hiring a medical expert. (Pl.'s Br. at 15; Pl.'s Reply at 4.)

"RFC is what an individual can still do despite his or her limitations."[3] SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability

---

motion. (Tr. 29–30.) The ALJ considered the "objective medical evidence" and the "physical examination findings." (Tr. 30, 19–21.) From this evidence, the ALJ found Wesley's range of motion a "good, full, or normal range of motion." (Tr. 30.)

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

8

to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and it is based upon all of the relevant evidence in the case record. *Id.* at *3–6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023–24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 404.1529; SSR 16-3P, 2017 WL 5180304, at *2 (S.S.A. Oct. 25, 2017); SSR 96-8p, 1996 WL 374184, at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *See* SSR 96-8p, 1996 WL 374184, at *5. The ALJ may draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991)

---

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength", including mental limitations. *Id.* at *6.

(changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse*, 925 F.2d at 790 ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") (citing *Bradley v. Bowen*, 809 F.2d 1053, 1057 (5th Cir. 1987)). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd*, 239 F.3d at 704 (quoting *Harris*, 209 F.3d at 417).

In making the RFC determination, the ALJ painstakingly analyzed the objective medical records and examination findings—in which there are no records that contradict the RFC determination. (Tr. 30; *see also* Tr. 18–29.) The ALJ examined treatment notes from July 24, 2017, finding Wesley had full range of motion without pain in her back and normal strength and motion in her knee. (Tr. 19, 395.) Treatment notes from December 13, 2017, similarly showed she had normal range of motion without pain in her neck, normal musculoskeletal range of motion, and normal gait. (Tr. 19, 683, 817.) Although on March 5, 2018, Wesley's physical examination showed some reduced range of motion, it was still within normal limits, and she had been released for a full workload. (Tr. 20, 519, 593.) Treatment notes from April 5, 2018, showed Wesley had intact sensation and normal range of motion in her neck. (Tr. 20, 375, 381–82.) July 11, 2018 treatment notes found Wesley's sensation and strength were normal. (Tr. 21, 462.) An emergency room visit on August 23, 2018, found Wesley had a normal range of motion in her neck and normal musculoskeletal range of motion. (Tr. 21, 698.) Additionally, Wesley denied that she had any chest pain, shortness of breath, abdominal pain, headaches, or fatigue. (Tr. 21, 654.) July 19, 2019 treatment notes again confirmed Wesley's sensation was intact while her diabetes and asthma were

well controlled. (Tr. 21, 369–70.) A May 26, 2020 emergency room visit again found a normal range of motion in the neck and normal musculoskeletal range of motion. (Tr. 21, 716.) Finally, Wesley stated at the hearing that she was able to walk for some time without assistance, such as in grocery stores. (Tr. 26–27, 65.) Treatment notes from the Mental Health and Mental Retardation Center ("MHMR") diagnosed Wesley with moderate recurrent major depressive disorder but panic disorder *without* agoraphobia. (Tr. 28, 808.) Although she had serious symptoms, the treatment notes found the severity of Wesley's condition to be mild. (Tr. 28, 807, 812, 817.) The ALJ also noted that MHMR found:

> Her mental status examinations indicated she was groomed, and she had normal speech, normal thought processes, intact associations, and unremarkable abnormal thought. . . . She was alert and fully oriented with intact recent memory, intact remote memory, normal attention and concentration, and intact fund of knowledge. Her mood was euthymic, and her affect was appropriate. Her judgment and insight were intact (Exhibit C17F/37, 42-43, 47).

(Tr. 28; *see* Tr. 817.) On July 24, 2017, treatment notes found Wesley was alert, fully oriented, and cooperative with good eye contact, judgment, insight, and speech. (Tr. 28, 395.) Similarly, July 17, 2018 treatment notes found that Wesley was alert, fully oriented, and cooperative with good eye contact and full mood and affect. (Tr. 28, 382.) Additionally, Wesley answered "not at all" to all depression symptom screening questions. (Tr. 28, 368.) An emergency room visit on August 23, 2018, found that Wesley was alert and fully oriented with normal mood, affect, judgment, and thought content. (Tr. 28, 698.) On August 30, 2018, MHMR noted that:

> [Wesley] *said she was doing well on medication. She had no complaints of depression, anxiety, or psychosis* (Exhibit C17F/30). *The severity of the claimant's condition was rated mild.* Her mental status examinations indicated she was groomed, and she had normal speech, normal thought processes, intact associations, and unremarkable abnormal thought. . . . She was alert and fully oriented with intact recent memory, intact remote memory, normal attention and concentration, and intact fund of knowledge. Her mood was euthymic, and her affect was appropriate. Her judgment and insight were intact (Exhibit C17F/30-31).

11

(Tr. 29, 800–01.) October 3, 2018 MHMR notes indicated that Wesley was able to control her ups and downs by herself using positive affirmations. (Tr. 29, 720.) Emergency room visits on March 7, 2019, and May 26, 2020, again indicated that Wesley was alert and fully oriented with normal mood, affect, behavior, judgment, and thought content. (Tr. 29, 656.)

As set forth above, despite this thorough analysis, Wesley argues that the ALJ's RFC determination is not supported by substantial evidence because there were no SAMC opinions regarding her limitations. (Pl.'s Br. at 12–17.) A review of the record reveals that Wesley is correct in her assertion that there were no SAMC opinions for the ALJ to rely on. (*See* Tr. 76–91). However, the record also reveals that there were no SAMC opinions for the ALJ to rely on because Wesley refused to cooperate. (*See* Tr. 80 (providing that "the evidence is insufficient due to claimant not cooperating with providing the needed evidence. . . . She was sent 3 letters regarding this and called as well."); *see also* Tr. 82 (providing that "she was called and she was sent a 3rd [follow up letter] with a firm deadline" and that there was "insufficient evidence as claimant did not cooperate."))

In essence, Wesley now asks this Court to find that the ALJ erred because Wesley's actions made certain evidence unavailable to the ALJ. The consequences of such a determination would be to give Wesley, and other claimants, the ability to waste precious time and resources of this Court, the agency, and the ALJ, by refusing to cooperate in the SAMC process. Additionally, while Wesley argues that the ALJ should have ordered an independent report, the record shows that the ALJ had no reason to believe that Wesley would cooperate as she had already failed to do so on two previous occasions. The Court declines to allow Wesley to use the SAMC opinions as both a sword and a shield.[5] Therefore, the Court finds that the ALJ conducted a thorough analysis

---

[5] In researching this issue, the Court found two cases in which a similar argument was presented. In the first, *Golden v. Comm'r of Soc. Sec.,* No. 3:22-CV-00397, 2024 WL 23174 (S.D. Tex. Jan. 2, 2024), the court reached the

of the evidence presented and did not err as substantial evidence supports the ALJ's RFC determination. (Tr. 28; *see also* Tr. 28–29.) Accordingly, remand is not required as to this issue.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is **AFFIRMED**.

SIGNED March 20, 2024.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

---

same conclusion as the undersigned and affirmed. In the second, *Porras v. Comm'r of Soc. Sec.*, the court found the opposite and reversed. *Porras v. Comm'r of Soc. Sec.*, No. 4:22-CV-1135-O-BP, 2024 WL 535207 (N.D. Tex. Jan. 23, 2024), *rep. and recommendation adopted*, No. 4:22-CV-1135-O-BP, 2024 WL 520025 (N.D. Tex. Feb. 9, 2024). However, this case is distinguishable from *Porras* because this case involves an application for benefits and *Porras* involved the revocation of benefits. As set forth above, at the application stage, the claimant bears the burden of proof. In contrast, at the revocation stage, the government bears the burden of proof. While the Court is skeptical of allowing claimants to rely on a problem that they created to gain remand, as is often the case, the outcome herein turns on who bears the burden of proof.